Joseph **DATLOF**, Appellant,

v.

**UNITED STATES** of America.

No. 15932.

United States Court of Appeals
Third Circuit.

Argued Nov. 1, 1966.

Decided Dec. 29, 1966.

Robert M. Taylor, Philadelphia, Pa., for appellant.

Joseph Kovner, Dept. of Justice, Tax Division, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Melva Graney, Robert H. Solomon, Attys., Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., of counsel on the brief), for appellee.

Before GANEY, SMITH and FREED-MAN, Circuit Judges.

OPINION OF THE COURT

GANEY, Circuit Judge.

Appellant, Joseph Datlof, brought a civil action for refund of $81.90 paid by

him to the Internal Revenue Service. The appellee, United States, counterclaimed for $31,499.45 representing the balance unpaid from a deficiency assessment against appellant in September of 1957 under § 6672 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6672 [1] for employees' federal income withholding taxes and the then two percent F.I.C.A. taxes "deducted" during the last three calendar quarters of 1955 from the wages of employees of a manufacturing corporation of which appellant was president and treasurer during the entire period of its existence.

In an opinion in which the evidence was thoroughly analyzed and the findings of fact and conclusions of law were specially set forth with painstaking care, the district court found that appellant was a responsible person whose duty it was to collect and truthfully account for and pay over employees' federal payroll deduction taxes, and that he collected and accounted for such taxes but willfully failed to pay them over to the Service. 252 F. Supp. 11 (E.D. Pa. 1966).

■ There was substantial evidence to support these findings. They were far from being clearly erroneous. Rule 52 (a) of the Federal Rules of Civil Procedure; Smith v. United States, 121 F.2d 692, 694–695 (C.A. 3, 1941); Bloom v. United States, 272 F.2d 215 (C.A. 9, 1959), cert. den. 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146.

■ Despite the fact that between July 14, 1955 and January 3, 1956, the employer paid creditors other than the Service a total of $108,072.09 by checks signed by appellant, and that the employer

was forced to cease manufacturing as the result of proceedings instituted by its landlord to collect rents and foreclose on a chattel mortgage covering its operating machinery, appellant contends that he should not be held liable for the assessment because assertedly the Service did not use due diligence in 1955 to collect from the employer the taxes upon which the amount of the assessment is based. This reason is not a ground for permitting him to recover the $81.90, nor a defense to appellee's counterclaim. The personal liability created under § 6672 is separate and distinct from that imposed upon the employer under § 3403 of the Code. Bloom v. United States, supra, at 221; Rosenberg v. United States, 327 F.2d 362, 364–365 (C.A.2, 1964). Also see Spivak v. United States, 254 F.Supp. 517, 527 (S.D.N.Y. 1966). The Service need not have attempted to collect from the employer before assessing a responsible person under § 6672. Cash v. Campbell, 346 F.2d 670 (C.A.5, 1965); Kelly v. Lethert, 362 F.2d 629, 635 (C.A.8, 1966).

■ Appellant also contends in the alternative that the Service erroneously included in the assessment the then two percent FICA tax required to be paid by the employer under § 3111 of the Code. For the purpose of this case, the appellee does not dispute that appellant is not responsible under § 6672 for that tax. Under this view, the employer's FICA tax is the least secured of the three taxes involved here. The record shows that sums reported due the Service by the employer for each of the calendar quarters of 1955 included three taxes: the

---

**1.** This section provides:
"SEC. 6672. FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX.

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable. (26 U.S.C. 1964 ed., Sec. 6672.)"

employer's two percent FICA tax; the employees' witholding tax and the employees' two percent FICA tax. The amounts were as follows:

| (1)<br>Calendar<br>Quarter | (2)<br>Employer's<br>FICA Tax | (3)<br>Percentage<br>of Total<br>Quarterly<br>Amount | (4)<br>Employees'<br>Withhold-<br>ing and<br>FICA Taxes | (5)<br>Percentage<br>of Total<br>Quarterly<br>Amount | (6)<br>Totals<br>for each<br>Quarter |
|---|---|---|---|---|---|
| 1st | $ 3,380.70 | 16.3 | $17,346.74 | 83.7 | $20,727.44 |
| 2nd | 3,437.62 | 16.4 | 17,537.99 | 83.6 | 20,975.61 |
| 3rd | 3,179.20 | 16.1 | 16,581.89 | 83.9 | 19,761.09 |
| 4th | 2,513.65 | 16.0 | 13,178.95 | 84.0 | 15,692.60 |
| Totals: | $12,511.17 | 16.2 | $64,645.57 | 83.8 | $77,156.74 |

(Table I)

According to the four "Certificates of Assessments and Payments" (Forms 899—Rev. 6–62) attached to the stipulation of facts, the employer, whose principal place of business was in Philadelphia, Pa., made fourteen payments from time to time between March of 1955 and mid-September of 1957, totaling $39,910.20 toward the sums due for the four quarters of 1955. The Service applied each of the fourteen payments to a total sum due for each quarter (See Table I, Column 6) as shown in footnote 2 below, without making any distinction as to any one of the three taxes involved. In other words for debit and credit purposes it treated the four sums as though they represented but a single tax. The Service also used a portion of three out of the fourteen payments to offset an equal number of miscellaneous items totaling $457.56 added to the assessment, and for which appellant does not dispute that he is liable. This reduced the total amount of the payments to $39,452.64. Summarized by quarters, the applied payments and balances were as follows:

| Quarter | Payments | Balances |
|---|---|---|
| First | $20,727.44 | —None— |
| Second | 10,343.53 | $10,632.08 |
| Third | 4,962.64 | 14,798.45 |
| Fourth | 3,419.03 | 12,273.57 |
| Totals: | $39,452.64 | $37,704.10 |

(Table II)

The net effect of the Service's application of the fourteen payments, says the appel-

2.

| | Date | Amount<br>of Payment | Calendar<br>Quarter to which<br>payment was applied |
|---|---|---|---|
| 1. | 3/31/55 | $13,791.14 | First |
| 2. | 9/30/55 | 7,109.70 | Second |
| 3. | 12/ 8/55 | 3,686.50 | First |
| 4. | 12/ 8/55 | 2,352.89 | " |
| 5. | 12/28/55 | 661.61 | Second |
| 6. | 1/11/56 | 13.48 | Second |
| 7. | 1/11/56 | 410.11 | " |
| 8. | 1/17/56 | 478.51 | " |
| 9. | 1/17/56 | 1,675.12 | " |
| 10. | 6/18/56 | 1,268.50 | First |
| 11. | 1/25/57 | 2,500.00 | Fourth |
| 12. | 1/25/57 | 2,500.00 | Third |
| 13. | 4/24/57 | 2,462.64 | " |
| 14. | 4/24/57 | 1,000.00 | Fourth |
| Total | | $39,910.20 | |

lee, was to liquidate the entire amount owed for the combined three taxes for the first quarter, the employer's tax for each of the last three quarters (since the balance of the payments after being applied to the first quarter was in excess of $9,130.47 the total of those three sums), and part of the employees' withholding and FICA taxes, leaving a remainder of $37,703.10 for those latter two taxes alone.

In addition this remainder was further reduced to $31,498.45 by subtracting $6,204.65 directly from it. The $6,204.65 consisted of three payments—one of them being the $81.90 item for which he sued to recover, not appearing on Form 899, made after the assessment of September 30, 1957, against appellant. Thus a total of $45,657.29, exclusive of the $457.56 item, has been received by the Service toward $77,156.74, the total amount of the combined three taxes originally owed by the employer. The difference between these two figures is $31,499.45, the amount for which judgment was rendered for the appellee on its counterclaim.

Appellant argues that he is entitled to a credit of $12,511.17, the aggregate of the employer's FICA taxes for the four quarters, or at least to a lesser amount if the taxes are listed separately as in Table I and the payments allocated to each of them on a more equitable basis.

At the outset, he cannot be given any additional credit for amounts paid toward the first quarter. The sum of $20,727.44 due for that quarter has been discharged—and pursuant to the request of the employer. Any tax formerly owed for that quarter is not at issue in this case. The maximum that could be claimed as a credit is $9,130.47, the total for the last three quarters.

If the balance of $24,929.75 ($45,657.19 minus $20,727.44) were applied to the oldest item first, then the total sum of $20,975.61 (See Table I, Column 3, second quarter) would also be discharged, and the maximum that could be claimed as credit by this method of application of payments would be $5,692.85, i.e., $3,179.20 plus $2,513.65. However, the remainder of $3,954.14, after discharging the sum owed for the second quarter, could also have been applied in two ways. One, against the $3,179.20 employer tax owed for the third quarter and the excess against the employees' taxes, leaving only a possible credit of $2,513.65, the employer's tax for the fourth quarter. And two, on a pro rata basis against $3,179.20 and $16,581.89 (See Table I, Columns 2 and 3, third quarter). This would leave a possible credit of $2,542.58 ($3,179.20 minus $636.62) plus $2,513.65, or a total sum of $5,066.23.

The figure of $24,929.75 could also have been applied on a pro rata basis to the three taxes owed by the employer for the last three quarters of 1955. The employer's tax for that period is $9,130.47. Sixteen point four percent of $24,929.75 is $3,918.62. Subtracting this amount from $9,130.47, leaves $5,212.85, the maximum amount which appellant could have been given credit by this method.

Assuming that, if made, the Service would be required to obey a request or direction from an employer that a certain payment be applied to a specific account due for payroll taxes, there is nothing in the record beyond the request that a check for $7,109.70 be used to defray the sum owed for the first quarter to show that the remittances here were accompanied by any such request or direction. The first quarter has been discharged, so appellant has not been harmed if the Service applied the $7,109.70 check to the second quarter instead of the first. In the absence of requests or directions accompanying the other payments, we know of no federal law or regulations which required the service to apply those payments to the oldest item due or on a pro rata basis.[3] For examples, see Gem-

3. For the Pennsylvania rule, see Dubois National Bank of Dubois, Pa. v. Hartford Accident & Indemnity Co., 161 F.2d 132, 137 (C.A.3, 1947), citing Woods Trust, 350 Pa. 290, 294, 38 A.2d 28, 30, and Page v. Wilson, 150 Pa.Super. 427, 433,

ological Institute of America v. Riddell, 149 F.Supp. 137 (S.D. Cal. 1957); United States v. Ragsdale, 206 F.Supp. 613 (W.D. Tenn. 1962); Graper v. United States, 206 F.Supp. 173, 179–180 (D.C. Wis. 1961). Consequently, the district court's refusal to reduce the assessment was not erroneous.

The judgment of the District Court will be affirmed.

28 A.2d 706. The Superior Court of Pennsylvania stated the rule as follows: "The debtor has a right to make the application, in the first instance, and failing to exercise it, the same right devolves on the creditor. When no application is made by either party, the law determines how the payments are to be applied in accordance with equitable rules and principles, and primarily, it deems the payments to have been made in discharge of the earliest liabilities of a running account—each item of credit is applied in extinguishment of the earliest debit items in the account; in other cases, it will apply the payment, when not appropriated by either party, in the way most beneficial to the creditor, that is, to the *debt least secured*, unless to the prejudice of a surety."